## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY M. PORTNOY and : | |
| GERARD M. MARTIN, as Trustees for : | |
| HUB PROPERTIES TRUST : | |
| Plaintiffs, : | NO. 02-CV-2905 |
| : | |
| v. : | HONORABLE CLIFFORD |
| : | SCOTT GREEN |
| OMNICARE PHARMACEUTICS, INC. : | |
| and : | |
| OMNICARE CLINICAL RESEARCH, INC. , : | |
| Defendants. : | |

## O R D E R

AND NOW, this _____ day of _____, 2003, upon consideration of

the Motion for Summary Judgment by Plaintiffs Barry M. Portnoy and Gerard M. Martin as

Trustees for HUB Properties Trust, and any response thereto, it is hereby ORDERED:

    1.    Plaintiffs' Motion for Summary Judgment is GRANTED;

    2.    Judgment is ENTERED in Plaintiffs' favor and against Defendants, Omnicare

Pharmaceutics, Inc. and Omnicare Clinical Research, Inc., as to the Defendants' liability under

the Lease and Lease Guaranty;

    3.    Within 14 days of the date of this Order, the parties shall provide the Court with

those materials necessary to determine the amount of damages to which Plaintiffs are entitled.

### BY THE COURT:

_____
**THE HONORABLE CLIFFORD SCOTT GREEN**
**UNITED STATES DISTRICT JUDGE**

484357

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY M. PORTNOY and** | : | |
| **GERARD M. MARTIN, as Trustees for** | : | |
| **HUB PROPERTIES TRUST** | : | |
| **Plaintiffs,** | : | **NO. 02-CV-2905** |
| | : | |
| **v.** | : | **HONORABLE CLIFFORD** |
| | : | **SCOTT GREEN** |
| **OMNICARE PHARMACEUTICS, INC.** | : | |
| **and** | : | |
| **OMNICARE CLINICAL RESEARCH, INC. ,** | : | |
| **Defendants.** | : | |
| | : | |

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Barry M. Portnoy and Gerard M. Martin as Trustees for HUB Properties Trust (collectively "HUB"), through their attorneys, Obermayer Rebmann Maxwell & Hippel LLP, hereby move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all counts of the Complaint. For the reasons set forth in the accompanying Memorandum of Law, which is incorporated herein by reference, Plaintiffs respectfully request that the Court enter a judgment in their favor and against Defendants Omnicare Pharmaceutics, Inc. and Omnicare Clinical Research, Inc. for the rent (Fixed Basic, Additional, and Accelerated) and other charges, expenses, fees, and obligations owed under the Lease.

484357

WHEREFORE Plaintiffs Barry M. Portnoy and Gerard M. Martin as Trustees for HUB Properties Trust respectfully request that this Court grant their Motion for Summary Judgment, and enter judgment in their favor.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

By: _____

PAUL S. DIAMOND
STEVEN A. HABER
STEPHEN W.W. CHING, JR.
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
(215) 665-3000

Attorneys for Plaintiffs Barry M. Portnoy and Gerard M. Martin as Trustees for HUB Properties Trust

Date: September 22, 2003

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY M. PORTNOY and | : | |
| GERARD M. MARTIN, as Trustees for | : | |
| HUB PROPERTIES TRUST | : | |
| Plaintiffs, | : | NO. 02-CV-2905 |
| | : | |
| v. | : | HONORABLE CLIFFORD |
| | : | SCOTT GREEN |
| OMNICARE PHARMACEUTICS, INC. | : | |
| and | : | |
| OMNICARE CLINICAL RESEARCH, INC. , | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Barry M. Portnoy and Gerard M. Martin as Trustees for HUB Properties Trust

(collectively "HUB"), by and through their attorneys, Obermayer Rebmann Maxwell & Hippel

LLP, hereby file their Memorandum of Law in support of their Motion for Summary Judgment.

## INTRODUCTORY STATEMENT

This is a simple case: Omnicare, a sophisticated commercial tenant, refuses to pay rent

for property it has occupied and used, even though the controlling 15-year Lease and the law

require such payment.  HUB has sued Omnicare for breach of contract and unjust enrichment.  A

clearer case for the granting of summary judgment is unlikely to present itself.

HUB anticipates that Omnicare, understanding that it is fully liable for over $13 million

in accelerated rent, will seek to conjure non-existent factual issues, hoping that if summary

judgment is denied, HUB will compromise its demand.  Accordingly, HUB anticipates that

Omnicare will present to the Court a confusing mass of factual irrelevancies and speculations, all

484357

in an effort to show that the flood damage Omnicare sustained during Tropical Storm Allison in 2001 somehow nullifies the controlling Lease.

HUB implores the Court to bear in mind when evaluating Omnicare's "defenses," the following undisputed dispositive points:

- The controlling Lease explicitly provides that in the event of even the most severe flood damage, Omnicare remains obligated to make necessary repairs and continue paying rent.

- Upon assuming the Lease, Omnicare knew that the subject property was in a federally delineated "flood zone." Indeed, Omnicare has maintained flood insurance for the Property since assuming the Lease.

- Even though Omnicare stopped paying rent in the 5th year of its 15-year Lease, it did not vacate the Property for another 18 months.

- During those rent-free 18 months, Omnicare continued to conduct business from the Property.

- Contrary to its Lease obligations, when Omnicare formally abandoned the Property, it failed to restore the Property to the condition it was when it entered the Lease.

In sum, HUB emphasizes once again that this is a very simple case: Omnicare asks the Court to bless a tenant's abandonment of clear contractual obligations that the tenant no longer finds commercially desirable. Of course, the law compels exactly the opposite result. Thus, this case presents the Court with the opportunity to hold clearly and unmistakably that a sophisticated commercial entity like Omnicare, having obtained the benefits of a contractual bargain, will be required to meet its contractual obligations as well.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from a lease for commercial real estate located in Fort Washington, Pennsylvania. The tenant is Defendant Omnicare Pharmaceutics, Inc. ("OPI"). Defendant Omnicare Clinical Research, Inc. ("OCR") has guaranteed OPI's performance under the Lease. The landlord is Plaintiff HUB Properties Trust ("HUB"). Plaintiffs Barry M. Portnoy and Gerard Martin are the trustees of HUB. Because Defendants have failed to pay rent and perform other contractual obligations, they are liable under the Lease for over $13 million in accelerated rent and other damages.

### Omnicare Assumes A Lease For Property
### FEMA Has Publicly Designated As A Floodzone

On December 3, 1996, OPI, through its predecessor, Bio-Pharm Pharmaceutics Services, Inc., entered into a lease with 525 Virginia Drive Associates Limited Partnership ("VDA") for a two-story commercial property located at 525 Virginia Drive, Fort Washington, Pennsylvania (the "Property"). A copy of the Lease is reproduced in the accompanying Appendix at Exhibit "A." On September 19, 1997, Bio-Pharm Pharmaceutics Services, Inc. changed its name to IBAH Pharmaceutics Services, Inc. On June 15, 2000, IBAH Pharmaceutics Services, Inc. changed its name to OPI. A copy of the Certificates of Amendment of Certificate of Incorporation evidencing these name changes is reproduced in the accompanying Appendix at Exhibit "B."

On December 3, 1996, OCR, through its predecessor, I.B.A.H., Inc., executed a Lease Guaranty, in which it unconditionally guaranteed to VDA, its successors, and assigns the full and prompt payment of all rent payable under the Lease, as well as full and prompt performance in accordance with the Lease. A copy of the Lease Guaranty is reproduced in the accompanying

484357                                        3

Appendix at Exhibit "C." On June 21, 2000, IBAH, Inc. changed its name to OCR. A copy of

the Certificate of Amendment of Certificate of Incorporation evidencing this name change is

reproduced in the accompanying Appendix at Exhibit "D."

On September 19, 1997, VDA sold the Property, and assigned its rights under the Lease

and Lease Guaranty to HUB. A copy of the assignment is reproduced in the accompanying

Appendix at Exhibit "E."

Since at least January 3, 1979, the Federal Government has publicly designated the Fort

Washington Industrial Park, where the Property is located, as a federally delineated floodzone.

See January 16, 1992 Federal Emergency Management Agency ("FEMA) Flood Insurance Study

for Upper Dublin Township, § 2.3 (reproduced in the accompanying Appendix at Exhibit "F").

Since that time, the Federal Government has issued publicly available flood insurance rate maps

("FIRMs"), designating the Property as being in a floodplain marked by flood hazards. (The

January 3, 1979 and February 16, 1995 FIRMs respecting the Property are reproduced in the

accompanying Appendix at Exhibit "G").

The term of the Lease is 15 years; it expires on February 16, 2012. (Exhibit A at

Preamble, ¶F and §1.02). The Fixed Basic Rent is $12,378,000 for the term, payable in monthly

payments that increase according to an agreed upon schedule. (Exhibit A at Preamble, ¶F and

§2.01). In addition to rent, the Lease requires the tenant to pay for all real estate taxes, utilities,

and insurance. (Exhibit A at §§ 2.01 and 2.02). The Lease further requires the tenant at its own

cost to keep the Property in good working order, and to deliver the Property in broom clean

condition at the expiration of the Lease. (Exhibit A at § 8.01).

### The Lease Explicitly Sets Out The Parties' Obligations In the Event of a Flood

The Lease contemplated and allocated among the parties the risk of damage from casualties such as floods. First, the tenant was responsible under the Lease for insuring the Property from damage due to casualties such as flood. (Exhibit A at § 10.01). Accordingly, upon assuming the Lease in 2000, Omnicare maintained flood insurance, and, in fact, purchased additional flood insurance from FEMA in the Spring of 2001 before the Flood. (March 11, 2003 Deposition of Janice Rice, Omnicare's risk management representative, the pertinent pages of which are reproduced in the accompanying Appendix at Exhibit "H," pp. 76, 92-95, 109).

Most significantly, under the Lease, Omnicare agreed to continue to meet its contractual obligations in the event of a casualty, and to repair, restore, and reconstruct the interior of the Property "with reasonable promptness." The Lease obligates the landlord to repair the exterior of the Property, and to abate rent during the reasonable time needed to repair the Property. Section 10.02 of the Lease provides in pertinent part:

> (a)    In the case the Premises or any portion thereof shall be totally or partially damaged or destroyed by fire or by any other casualty whatsoever, then Landlord and Tenant shall proceed with reasonable promptness, and in accordance with paragraph (c) below, to repair and restore the Premises to at least as good a condition as that which existed immediately before the fire or other casualty and during such repair period, there shall be an abatement of rent.
>
> *        *        *
>
> (c)    All repairs, restoration and reconstruction to the interior of the Building, or other portions of the Premises comprising Tenant Work shall be performed by Tenant ... All repairs, restoration and reconstruction to the exterior of the Building, or other exterior improvements to the Premises shall be performed by the Landlord.

(Exhibit A at § 10.02).

### After Tropical Storm Allison Damages the First Floor of Omnicare's Facility, Omnicare Resumes Operations, But Stops Paying Rent

On June 16 and 17, 2001, the first floor of the Property suffered flood damage as a result of Tropical Storm Allison. (Omnicare's Answer and Affirmative Defenses, which is reproduced in the accompanying Appendix at Exhibit "I," ¶ 19). HUB agreed temporarily to abate Omnicare's obligation to pay rent until the flood damage to the Property could be repaired. (Exhibit I at ¶ 20). In accordance with § 10.02 of the Lease, requiring Omnicare and HUB to "proceed with reasonable promptness . . . to repair and restore the Premises to at least as good a condition as that which existed immediately prior to such . . . casualty," HUB quickly met its obligation to repair the Property's exterior. Omnicare completed only some of the required interior repairs, however. (Exhibit I at ¶ 25; October 29, 2002 Deposition of Omnicare Corporate Designee David Morra, the pertinent pages of which are reproduced in the accompanying Appendix at Exhibit "J," pp. 176-180; October 30, 2002 Deposition of Omnicare Corporate Designee Ronald Greenspan, the pertinent pages of which are reproduced in the accompanying Appendix at Exhibit "K," p. 71).

In mid-2002, Omnicare announced that it intended to abandon the Property. (Exhibit I at ¶¶ 1, 28). That intention notwithstanding, Omnicare resumed operations at the Property, and continued to occupy the Property until January 2003, generating millions of dollars of revenue. (Exhibit I at ¶¶ 23 and 24; Exhibit K, pp. 74-76; Exhibit J, pp. 184-86; January 22, 2003 Letter from Omnicare's Counsel, reproduced in the accompanying Appendix at Exhibit "L"). *Remarkably, during the 18 months from the Flood to the abandonment of the Property, Omnicare refused to pay any rent whatsoever.* (Exhibit K, pp. 75-76). On March 12, 2002, HUB served Omnicare with a notice of default and notice of acceleration (Exhibit "M" in the

accompanying Appendix), citing the failure to pay rent, to make necessary interior repairs, and to restore the Property to pre-Flood conditions.

### When Omnicare Fails to Honor Any of Its Lease Obligations, HUB Begins This Lawsuit

On May 15, 2002, HUB filed the instant Complaint, alleging breach of contract and unjust enrichment. In its Answer, Omnicare admitted that: (1) it stopped paying rent after the Flood; (2) it continued to occupy the Property, without rent, after the Flood; (3) it vacated the Property before the expiration of the Lease; and (4) it failed to restore the Property as required by the Lease. (Exhibit I at ¶¶ 1, 23, 24, 25, 28, 31, 33; Exhibit J, pp. 129-130, 176-179, 206; Exhibit K, pp. 68, 71, 74-76; Exhibit L).

The parties have completed all discovery, and the matter is appropriate for summary judgment. The undisputed facts show quite plainly and simply that Omnicare, having signed a Lease that obligates continued performance in the event of a flood, cannot "nullify" the Lease because a flood in fact occurred.

### ARGUMENT

Each of Omnicare's affirmative defenses fails as a matter of law. The provisions of the Lease, requiring Omnicare to continue paying rent and otherwise perform under the Lease in the event of a casualty, bar Omnicare from nullifying its obligations because of a casualty (a flood). Omnicare's claims of commercial impossibility and frustration as a result of the Flood are especially offensive because Omnicare continued to occupy and conduct business at the Property well after the Flood. In these circumstances, Omnicare's admitted failures to pay the accelerated rent, and to complete the required interior repairs, compel the entry of summary judgment.

484357                                              7

**I.    THE ABSENCE OF DISPUTED, MATERIAL FACTS COMPELS
THE GRANT OF SUMMARY JUDGMENT**

This Court recently wrote:

> Summary judgment shall be awarded "if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is
> "material" if the dispute may affect the outcome of the suit under
> the governing law and is "genuine" if a reasonable jury could
> return a verdict for the nonmoving party.  See Anderson v. Liberty
> Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505
> (1986). Additionally, the evidence presented must be viewed in the
> light most favorable to the nonmoving party. See American Flint
> Glass Workers Union, AFL-CIO v. Beaumont Glass Co., 62 F.3d
> 574, 578 (3d Cir. 1995).

N.Y. Pumping, Inc. v. O'Connor Truck Sales South, Inc., Civil Action No. 02-7435, 2003 U.S.

Dist. LEXIS 12223, *5-*6 (E.D.Pa. June 23, 2003) (Honorable Clifford Scott Green)

As this Court further explained:

> Summary judgment is mandated "against a party who fails to make
> a showing sufficient to establish the existence of an element
> essential to that party's case." Celotex Corp. v. Catrett, 477 U.S.
> 317, 321, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The
> moving party is therefore entitled to judgment as a matter of law
> because the non-movant has failed to make a sufficient showing on
> an essential element of his claim for which he has the burden of
> proof.  Id.

McCaffery v. Travelers Ins., Civil Action No. 02-1059. 2003 U.S. Dist. LEXIS 4685, *5

(E.D.Pa. March 5, 2003) (Honorable Clifford Scott Green).

Here, it is undisputed that Omnicare has failed to pay the rent and other costs under the

Lease, and that it has failed to restore the Property as required by the Lease.  Further, it is

undisputed that the Lease requires Omnicare to continue to perform in the event of a casualty

such as flood.  In these circumstances, Omnicare's affirmative defenses seeking to terminate the

484357                                        8

Lease as result of flood fail as a matter of law.  Accordingly, the Court should grant summary judgment in HUB's favor.

**II.    THERE IS NO DISPUTE THAT HUB HAS MADE OUT EACH AND EVERY ELEMENT OF ITS BREACH OF CONTRACT AND UNJUST ENRICMENT CLAIMS**

Under Pennsylvania law, a breach of contract claim requires Plaintiff to prove four elements: (1) the existence of the contract to which plaintiff and defendant were parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract; and (4) that damages resulted from the breach.  Perry v. Sonic Graphic Sys., 94 F. Supp. 2d 616, 622 (E.D.Pa. 2000) (Honorable J. Curtis Joyner).  "Unjust enrichment occurs when 1) a benefit is conferred on the defendant by the plaintiff, 2) appreciation of the benefit by the defendant, and 3) the circumstances are such that it would be unjust or inequitable for the defendant to retain the benefit without payment."  vBank v. Check Express, Inc., Civil Action No. 01–3225, 2003 U.S. Dist. LEXIS 9759 (E.D.Pa. May 8, 2003) (Honorable Mary A. McLaughlin) (citing Wiernak v. PHH U.S. Mortgage Corp., 1999 Pa. Super. 193, 736 A.2d 616, 622 (1999)).

The undisputed facts described above certainly make out these elements.  Omnicare admits that: (1) a lease between HUB and Omnicare exists; (2) Omnicare was obligated under the Lease to pay rent and other costs and maintain the Property; (3) that it has not met these obligations; and (4) HUB has suffered damage as a result.

Similarly, it is undisputed that: (1) for 18 months Omnicare existed and operated on the Property rent-free; (2) this failure to pay rent benefited Omnicare; and (3) it would be unjust under the Lease to allow Omnicare to keep these rental monies.

Thus, Omnicare does not dispute that HUB has proven the factual elements of its breach of contract and unjust enrichment claims.  Rather it seeks to interpose the following affirmative defenses:

1.    Breach of the covenant of quiet enjoyment;

2.    The doctrine of impossibility and/or impracticability of performance;

3.    The doctrine of frustration of purpose;

4.    Breach of the covenant of good faith and fair dealing;

5.    The doctrine of mutual mistake;

6.    Defendants are not in breach of the Lease;

7.    HUB's complaint fails to state a claim for which relief may be granted;

8.    HUB is not entitled to accelerated rent;

9.    Omnicare's obligations under the terms of the Lease and the Guaranty are terminated; and

10.   Omnicare's obligations under the terms of the Lease and the Guaranty are terminated due to a shortfall of insurance coverage for the Property.

(Exhibit I).  As set forth below, the Court should reject each of Omnicare's affirmative defenses as a matter of law.

## III.    A FLOOD DOES NOT CONSTITUTE A BREACH OF THE COVENANT OF QUIET ENJOYMENT

Omnicare asserts that "Plaintiffs' complaint is barred by the covenant of quiet enjoyment."  (Exhibit I at page 6).  It is well-settled, however, that a property owner is not the insurer or guarantor of the safety of individuals on its property with regard to Acts of God such as flood.  Cf. Miller v. Stahl, 239 U.S. 426 (1915) (innkeeper "has never been an insurer of the safety of his guests" from Acts of God such as fire); Fiat Motors of North America, Inc. v.

<u>Mayor and Council for City of Wilmington</u>, Civil Action No. 82-691, 1987 U.S. Dist. LEXIS

7529, *16-*18 (D. Del. August 20, 1987) (citing 49 Am.Jur.2d, Landlord and Tenant, § 767)

("the law simply does not imply a warranty on the part of a landlord that no accident shall befall

the tenant from external forces, such as storms, tornadoes, earthquakes, or snowslides"); <u>O'Neill</u>

<u>v. Batchelor Brothers, Inc.</u>, 421 Pa. 413, 416, 219 A.2d 682, 684 (1966); <u>Ritchey v. Cassone</u>, 296

Pa. 249, 255-56, 145 A. 822, 824 (1929).

 Accordingly, damage to a tenant as a result of an Act of God (such as a flood), does not

constitute a breach of the warranty of quiet enjoyment, and does not allow the tenant to discharge

its rent and other obligations under its lease. <u>No. 14 Coal Co. v. Pennsylvania Coal Co.</u>, 416 Pa.

218, 220-21, 206 A.2d 57, 58 (1965) (a flood disaster does not "constitute[] a breach of implied

warranty of quiet enjoyment").  This is especially true where the landlord has not committed any

willful, arbitrary, or affirmative wrongful act resulting in an actual or constructive eviction. <u>Id.</u>,

416 Pa. at 220-21, 206 A.2d at 58 (1965); <u>Lichtenfels v. Bridgeview Coal Co.</u>, 366 Pa. Super.

304, 309, 531 A.2d 22, 25 (1987); <u>Soltis v. Hovey</u>, No. C3-93-1515, 1994 Minn. App. LEXIS

199, *4 (Minn. Cir. App. March 8, 1994); <u>Self Service Furniture Fair, Inc. v. 450 Realty Corp.</u>,

114 N.Y.S.2d 774, 776, 1952 N.Y. Misc. LEXIS 1567, *3 (N.Y. 1952).

 Indeed, courts, including the Eastern District of Pennsylvania, have rejected breach of the

covenant of quiet enjoyment defenses based on allegations that the landlords failed to take the

precautions necessary to protect their properties from the risk of casualties such as floods. <u>Wm</u>

<u>H. McGee & Co. v. Richard I. Rubin and Co.</u>, No. Civ. A. 95-0237, 1995 U.S. Dist. LEXIS

8469, *13-*14, 1995 WL 366075, *4 (E.D.Pa. June 20, 1995) (Honorable Ronald L. Buckwalter)

(dismissing a claim by a tenant's insurer arising from a fire at a commercial building, that the

landlord breached the covenant of quiet enjoyment by failing to maintain the building's fire

detection and suppression systems); <u>Fiat Motors of North America, Inc.</u>, 1987 U.S. Dist. LEXIS

at *16-*18 (dismissing a claim arising from flood damage to an automobile dealership that

landlord breached the covenant of quiet enjoyment by failing to disclose parking lot was within a

flood hazard area, and by failing to design, build, and maintain the property to prevent flood

damage).

In the case at bar, the damage Omnicare purportedly suffered was the result of a flood, an

Act of God.  Under the cases cited above, this does not constitute a breach of the covenant of

quiet enjoyment.  Further, there was no "willful, arbitrary, or affirmative" wrongful act on the

part of HUB resulting in an actual or constructive eviction.  In these circumstances, this Court

should enforce the Lease against Omnicare and reject its affirmative defense based on a breach

of the covenant of quiet enjoyment.

## IV.   THE LEASE ITSELF PRECLUDES ANY CLAIM OF IMPRACTICABILITY, IMPOSSIBILITY, AND FRUSTRATION OF PURPOSE

Omnicare also asserts that HUB's claims are barred by the "doctrine of impossibility

and/or impracticability of performance" and by the "doctrine of frustration of purpose." (Exhibit

I at page 6).  The provisions of the Lease requiring Omnicare to continue performing in the event

of a casualty such as flood, and to maintain adequate casualty insurance, bar these defenses as a

matter of law.

In Pennsylvania, "the doctrines of commercial impracticability and frustration of purpose

are to be applied sparingly."  <u>Dorn v. Stanhope Steel, Inc.</u>, 368 Pa. Super. 557, 586, 534 A.2d

798, 812 (1987).  "Otherwise, every agreement that becomes disadvantageous to a party. . .

would entitle that party to be excused from performing under the agreement."  <u>Id.</u>, 368 Pa. Super.

at 558, 534 A.2d at 813. The doctrines will not excuse a party's non-performance where the party had expressly or impliedly agreed to perform in spite of the alleged impracticability or impossibility. Albert M. Greenfield & Co. v. Kolea, 475 Pa. 351, 357, 380 A.2d 758, 760-61 (1977). Accord United States v. Winstar Corp., 518 U.S. 839, 907-908 (1996) (rejecting an impossibility defense based on a regulatory change where the contract allocated the risk of its occurrence); Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1295 (Fed. Cir. 2002) (rejecting impossibility/impracticability and frustration defenses where the "language or the circumstances indicate allocation of the risk to the party seeking discharge"); Gulf Oil Corp. v. Federal Power Com., 563 F.2d 588, 599 (3d Cir. 1977) (rejecting a claim for commercial impracticability based on provisions in the lease allocating risk between the parties); Northern Indiana Public Service Co. v. Carbon County Coal Co., 799 F.2d 265, 278 (7th Cir. 1986) (the doctrines of impossibility and frustration "have no place when the contract explicitly assigns a particular risk to one party or the other").

Indeed, Pennsylvania has adopted § 261 of the Restatement (Second) of Contract, which provides:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, *unless the language [of the contract] or the circumstances indicate to the contrary*.

Olbum v Old Home Manor, Inc., 313 Pa. Super. 99, 111, 459 A2d 757, 763 (1983) (defense of impracticability is available only "[i]n the absence of special language or circumstances indicating the a party has assumed the risk"). See Luber v. Luber, 418 Pa. Super. 542, 548-49, 614 A.2d 771, 774 (1992) (citing §261 of the Restatement (Second) of Contracts).

As quoted above (at p. 5), Omnicare explicitly agreed to perform in the event of a flood or other casualty. (Exhibit A at §10.02) ("In the case the Premises . . . shall be . . . damaged by . . . casualty[,] . . .Landlord and Tenant shall proceed . . . to repair and restore the Premises to at least as good a condition as that which existed immediately before the . . . casualty; [a]ll repairs . . . to the interior of the Building . . . shall be performed by Tenant"). Further, Omnicare was responsible under the Lease for procuring and maintaining casualty insurance, and had, in fact, maintained flood insurance. (Exhibit "A" at § 10.01) ("Tenant, at Tenant's sole cost . . . , shall keep . . . the Premises to be kept continuously insured. . . . such casualty policy shall name Landlord as the loss payee"). See Exhibit H, pp. 76, 92-95, 109.

In these circumstances, this Court should dismiss Omnicare's Affirmative Defenses based on impossibility of performance and frustration of purpose, and should enter judgment in HUB's favor.

## V. THERE IS NO "DUTY OF GOOD FAITH AND FAIR DEALING" BETWEEN A COMMERCIAL LANDLORD AND TENANT

Omnicare asserts that "Plaintiffs' claims are barred by the covenant of good faith and fair dealing." (Exhibit I at page 7). Although HUB earnestly believes it treated Omnicare fairly throughout, that is beside the point: "Pennsylvania courts . . . have recognized the duty of good faith and fair dealing only in special, limited situations such as a confidential or fiduciary relationship." Northeast Jet Center v. Lehigh-Northampton Airport Authority, Civil Action No. 90-1262, 1996 U.S. Dist. LEXIS 11177, *56 (E.D.Pa. 1996) (Honorable Franklin S. Van Antwerpen). See Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993); USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 439 (3d Cir. 1993); Mill Run Assocs. v. Locke Prop. Co., Civil Action No. 02-8042, 2003 U.S. Dist. LEXIS 12182, *29 (E.D.Pa. July 7, 2003)

(Honorable Peter B. Scuderi); <u>Allstate Transportation Co. v. Southeastern Pennsylvania Transportation Authority</u>, 2000 U.S. Dist. LEXIS 3831, *62 (E.D.Pa. March 27, 2000) (Honorable John R. Padova); <u>Agrecycle, Inc. v. City of Pittsburgh</u>, No. 2046 C.D. 2000, 2001 Pa. Commw. LEXIS 649, *7 (September 6, 2001); <u>Com., Dep't of Transportation v. E-Z Parks, Inc.</u>, 153 Pa. Commw. 258, 268, 620 A.2d 712, 717 (Pa. Cmwlth. 1993), *appeal denied*, 534 Pa. 651, 627 A.2d 181 (1993).

Pennsylvania courts have repeatedly held that a typical landlord-tenant relationship does not constitute the type of "fiduciary or similar special relationship" required to maintain a claim for breach of the duty of good faith and fair dealing.  <u>E-Z Parks, Inc.</u>, 153 Pa. Commw. at 268, 620 A.2d at 717; <u>Parkway Garage, Inc.</u>, 5 F.3d at 701 (dismissing breach of duty of good faith and fair dealing in a dispute involving a commercial lease).  See <u>Doran v. McConlogue</u>, 150 Pa. 98, 110, 24 A. 357, 359 (Pa. 1892) (there is no confidential relationship between landlord and tenant); <u>Tallman's Estate</u>, 148 Pa. 286, 292, 23 A. 986, 988 (Pa. 1892) (same); <u>Fisher Dev. Co. v. Boise Cascade Corp.</u>, 37 F.3d 104, 111 (3d Cir. 1994) (the relationship between a landlord and tenant, especially where the parties dealt at arm's length, is not a fiduciary relationship). Pennsylvania courts will especially refrain from imposing an independent duty of good faith where "two sophisticated business entities have engaged in an arms-length transaction." <u>Northeast Jet Center</u>, 1996 U.S. Dist. LEXIS at *57 (quoting <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 618 (3d Cir. 1995)).  See <u>Creative Dimensions In Management, Inc. v. Thomas Group, Inc.</u>, Civil Action 96-6318, 1999 U.S. Dist. LEXIS 5120, *11 (E.D.Pa. April 16, 1999) (Honorable Jay Waldman).

Further, "[t]here can be no implied covenant [of good faith and fair dealing] as to any matter specifically covered by the written contract between the parties." <u>USX Corp.</u>, 988 F.2d at

439 (citing <u>Reading Terminal Merchants Ass'n v. Samuel Rappaport Assocs.</u>, 310 Pa. Super. 165, 176, 456 A.2d 552, 557 (Pa. Super. 1983)).  Accordingly, the Court should dismiss a claim for breach of the duty of good faith and fair dealing where "such an implied duty would defeat a party's express contractual rights specifically covered in the written contract by imposing obligations that the party contracted to avoid."  <u>Agrecycle, Inc.</u>, 2001 Pa. Commw. LEXIS at *7-*8; <u>Allstate Transportation Co.</u>, 2000 U.S. Dist. LEXIS at *62.

These cases control here.  The commercial relationship between sophisticated tenant Omnicare and HUB, its landlord, does not give rise to a duty of good faith and fair dealing. Further, the law bars Omnicare's attempts to evade explicit Lease provisions through a non-existent "duty of good faith and fair dealing."  Accordingly, the Court should dismiss Omnicare's Fourth Affirmative Defense.

## VI.  A CASUALTY CONTEMPLATED BY THE PARTIES CANNOT SUPPORT A DEFENSE OF "MUTUAL MISTAKE"

Omnicare next asserts that "Plaintiffs' claims are barred by the doctrine of mutual mistake."  The same risk allocation provisions discussed above also preclude the application of the mutual mistake doctrine.

Courts will rescind a contract based on mutual mistake only "in exceptional situations, where a mistake of both parties upsets the very basis for the contract in such a way as to have material effect on the agreed exchange of performances."  <u>Spatz v. Nascone</u>, 283 Pa. Super. 517, 531, 424 A.2d 929, 936 (1981).   "Relief for mutual mistake is not available if the contract puts the risk of such a mistake on the party asking reformation . . . ."  <u>Aluminum Co. of America v. Essex Group, Inc.</u>, 499 F.Supp. 53, 67 (W.D.Pa. 1980).  See <u>Loyal Christian Ben. Ass'n v. Bender</u>, 342 Pa. Super. 614, 618, 493 A.2d 760, 763 (1985) (mistake "must not be one as to

which the injured party bears the risk"). This is especially true where the parties to the contract are large, sophisticated business entities. <u>Aluminum Co. of America</u>, 499 F.Supp. at 68.

Further, Pennsylvania has adopted § 152 of the Restatement (Second) of Contracts, which provides:

> Where a mistake of both parties at the time a contract was made as to the basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in section 154.

<u>Spatz</u>, 283 Pa. Super. at 531, 424 A.2d at 936 (referring to earlier version of §152); <u>Wheelabrator Frackville Energy Co.</u>, 1990 U.S. Dist. LEXIS at *74.

Pennsylvania has also adopted Restatement Section 154, which provides:

> A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time of the contract is made, that he has only limited knowledge with respect to the facts to which the mistakes related but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts, § 154.

As stated above, the Lease explicitly sets forth the parties' obligations in the event of a casualty such as flood. (Exhibit A at §10.02). In these circumstances, there was no "mistake" at all; the Lease itself precludes application of the mutual mistake doctrine. Accordingly, this Court should dismiss Omnicare's affirmative defense based on the mutual mistake doctrine, and enter judgment in HUB's favor.

484357

**VII.    UPON THE COURT'S GRANTING SUMMARY JUDGMENT AS TO LIABILITY, HUB WILL PRESENT UNDISPUTED FACTS AS TO THE AMOUNT OF DAMAGES TO WHICH IT IS ENTITLED**

HUB has moved for summary judgment as to both liability and damages.  As a convenience to the Court, HUB has, at this time, presented only those undisputed facts that establish Omnicare's liability under the Lease.  Should the Court so direct, HUB will present those undisputed facts as to damages immediately.   Otherwise, HUB will make the damages presentation once the Court grants summary judgment as to liability.

## CONCLUSION

For all the foregoing reasons, Plaintiffs Barry M. Portnoy and Gerard M. Martin as Trustees for HUB Properties Trust respectfully request that this Court grant their Motion for Summary Judgment, and enter judgment in their favor with respect to the Complaint.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

By: _Paul S. Diamond_

PAUL S. DIAMOND
STEVEN A. HABER
STEPHEN W.W. CHING, JR.
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
(215) 665-3000

Attorneys for Plaintiffs Barry M. Portnoy and Gerard M. Martin as Trustees for HUB Properties Trust

Date: September 22, 2003

484357                                18

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARRY M. PORTNOY and** | : | |
| **GERARD M. MARTIN, as Trustees for** | : | |
| **HUB PROPERTIES TRUST** | : | |
| **Plaintiffs,** | : | **NO. 02-CV-2905** |
| | : | |
| **v.** | : | |
| | : | |
| **OMNICARE PHARMACEUTICS, INC.** | : | |
| **and** | : | |
| **OMNICARE CLINICAL RESEARCH, INC. ,** | : | |
| **Defendants.** | : | |
| | : | |

I, STEPHEN W. W. CHING, JR., ESQUIRE, hereby certify that on this 22nd day of September, 2003, I caused a true and correct copy of Plaintiffs' Motion for Summary Judgment (accompanied by proposed order, supporting memorandum of law, and Appendix of Exhibits) to be forwarded, via HAND DELIVERY, to all parties, addressed as follows:

Richard P. McElroy, Esquire
Adam M. Share, Esquire
Todd A. Schoenhaus, Esquire
Blank Rome Comisky & McCauley LLP
One Logan Square
Philadelphia, PA 19103-6998

STEPHEN W. W. CHING, JR.