IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARRY M. PORTNOY and :
GERARD M. MARTIN, as Trustees for :
HUB PROPERTIES TRUST
                   Plaintiffs, :   CIVIL ACTION
                              :
              v. :   NO. 02-2905
                              :
OMNICARE PHARMACEUTICS, INC. :
and OMNICARE CLINICAL :
RESEARCH, INC. :
                   Defendants. :

## MEMORANDUM

**Green, J.**                                                                       **June_____, 2004**

      Presently pending are the parties' cross motions for summary judgment and the oppositions and replies thereto. This action arises from a commercial lease of a property ("525") located in Fort Washington, Pennsylvania. The Plaintiffs, Barry M. Portnoy and Gerard M. Martin, as Trustees for HUB Properties Trust ("HUB"), sued a commercial tenant, Omnicare Pharmaceutics, Inc. and Omnicare Clinical Research, Inc. (collectively, "Omnicare") for breach of contract and unjust enrichment for failure to pay rent. HUB is asking for over $13 million in accelerated rent. Oral arguments were heard on the motions on February 10, 2004 before this Court. Subsequently, parties entered into lengthy settlement negotiations but were unable to come to a resolution.

**I.**     **Factual and Procedural History**

      On December 3, 1996, Bio Pharm Pharmaceutics Services, Inc. ("Bio Pharm") entered

into a fifteen year lease agreement (the "Lease") with 525 Virginia Drive Associates Limited Partnership ("VDA") for a two-story commercial property in Fort Washington, Pennsylvania ("525")  VDA assigned its rights under the Lease to HUB who purchased the building in 1997. Omnicare acquired Bio Pharm, succeeding to the rights and obligations of Bio Pharm under the Lease.  Similar to Bio Pharm, Omnicare manufactures, tests, and packages investigational pharmaceuticals for use in clinical trials. (Def. Mot. S. J. at 3.)

This suit arose when Omnicare sustained severe flood damage to the first floor of 525 during Tropical Storm Allison in 2001, ceasing Omnicare's operations.[1]  Pursuant to the Lease, Defendant made repairs to the exterior portions and plaintiff to the interior.  The interior portions were not returned to as good a condition as that which existed prior to the flood (Def. Answer ¶25.), but while repairs were being made, the rent was abated.  After attempting to salvage ongoing operations, resuming limited operations in a portion of the building and discussing flood prevention options with HUB, in mid-2002, Omnicare informed HUB it was vacating the building by the end of August 2002.  Omnicare informed HUB that it did not intend to perform any further repairs (Def. Answer ¶26) and occupied the building until January 2003 without the payment of additional rent.  On May 15, 2002, HUB initiated this action for breach of contract and unjust enrichment.

Defendants responded to Plaintiff's complaint with several affirmative defenses: (1) breach of the covenant of quiet enjoyment; (2) doctrine of impossibility and/or impracticality of performance; (3) doctrine of frustration of purpose; (4) breach of the covenant of good faith and

---

[1] Water also entered the property in 1999 to a much lesser degree during Tropical Storm Floyd.

fair dealing; (5) doctrine of mutual mistake; (6) Defendants are not in breach of the Lease; (7) Plaintiff's complaint fails to state a claim for which relief may be granted; (8) Plaintiffs are not entitled to accelerate additional rent; (9) Defendants' obligations under the terms of the Lease and the Guaranty are terminated; and (10) Defendant's obligations under the terms of the Lease and the Guaranty are terminated due to a shortfall of insurance coverage for the Premises. (Def. Answer at pp.6-7.)  Currently before this court are the parties' cross motions for summary judgment.  In Omnicare's Motion, Defendants claim their obligation to perform under the Special Purpose Lease is excused.  In HUB's Motion, Plaintiffs contend the Defendants' affirmative defenses fail as a matter of law and Omnicare's admission to not paying rent entitles Plaintiffs to summary judgment.

**II.    Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986).  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. See id. 477 U.S. at 324, 106 S.Ct. at 2553.  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmovant. See American Flint Glass Workers, AFL-CIO v. Beaumont Glass Company, 62 F.3d 574, 578 (3d Cir. 1995). However, a party opposing summary judgment must do more than just rest upon mere allegations, general denials or vague statements. Trap Rock Indus. Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir.1992).

### III.  Discussion

The parties' cross-motions require this court to determine whether Defendants are responsible for paying rent under a commercial lease after a flood severely damaged the property, impacting Defendants' business. As both motions address similar but not identical issues, we first address Defendant's motion and then the remaining issues of the Plaintiff's motion.

####   A.    Frustration of Purpose, Impracticability of Performance

Defendants Omnicare ask this court in their Motion for Summary Judgment to find that Defendants' obligation to perform under the Lease is excused by the doctrines of frustration of purpose, impracticability of performance, and mutual mistake. First, Omnicare contends it could not continue its duty under the Lease due to frustration of purpose and is therefore excused from liability. Defendants argue based on the Lease's express language that the parties intended the property to be used for manufacturing, testing, analyzing, packaging and distribution of pharmaceutics. The Lease provides the Tenant is to use 525 for

> its offices, laboratories, and warehouse use in connection with the conduct of Tenant's business of manufacturing, testing and analyzing, packaging, and distribution of pharmaceutical products, and in support of Tenant's clinical

§ 5.01.
      research divisions, in accordance with Section 5.02 hereof, and for no other purpose. Tenant shall not place any weights in any portion of the Premises in excess of the floor load limits, as estimated by Tenant's engineer.

Omnicare's business of conducting clinical drug trials requires conforming to strict standards enforced by the FDA. Specifically, Defendants claim they can no longer operate at 525 because of the highly sensitive nature of the operations, the history of flooding at 525, the 2001 flood, and the inability to reduce the risk of future flooding Omnicare at 525 is unappealing to past and future customers. Omnicare further argues that these unforeseeable circumstances make it improbable that Omnicare would be able to retain enough customers to continue its business at that location frustrating the purpose of the Lease. We do not find merit in Defendants' arguments.

The frustration of purpose doctrine acts as an exception to the underlying contract principle that a promisor is bound to perform according to the agreement's terms. The doctrine, recognized in Pennsylvania courts, discharges the performance of a contract absent an agreement otherwise when the subject matter of the contract is no longer available.[2] The Restatement of Contracts, Second, §265 sets forth the following:

> Where, after a contract is made, a party's principle purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate to the contrary.

This court cannot now relieve Defendants of their obligation under the Lease because this

---

[2] See Greenfield v. Kolea, 475 Pa. 351, 380 A.2d 758, 759 (1977). See also Greek Catholic Congregation of Borough of Olyphant v. Plummer, 338 Pa. 373, 382, 12 A.2d 435, 439 (1940); West v. Peoples First Nat. Bank & Trust Co., 378 pa. 275, 282, 106 A.2d 427, 432 (1954).

principle does not apply where, as here, the parties contemplated such a contingency and allocated the risk between the parties. There is a detailed contract between these two sophisticated parties in which the allocation for risk of casualty is distributed between the parties. The Lease Agreement provides in pertinent part:

> Section 10.02. <u>Damage or Casualty</u>.
> (a) In case the Premises or any portion thereof shall be totally or partially damaged or destroyed by fire or by any other casualty whatsoever, then Landlord and Tenant shall proceed with reasonable promptness, and in accordance with paragraph (c) below, to repair and restore the Premises to at least as good a condition as that which existed immediately prior to such fire or other casualty and during such repair period, there shall be an abatement of rent. In the event Landlord receives any insurance proceeds from the property insurance maintained by Tenant pursuant to Section 10.01, Landlord shall turn such proceeds over to Tenant for the purpose of making such repairs.
> \* \* \*
> (c) All repairs, restoration and reconstruction to the interior of the Building, or other portions of the premises comprising the Tenant Work shall be performed by Tenant subject to the conditions set forth in Section 4.02 and Section 9.01 hereof. All repairs, restoration and reconstruction to the exterior of the Building, or other exterior improvements to the Premises shall be performed by Landlord. The parties shall cooperate with one another and shall have mutual responsibility for the adjustment of all insurance claims.

First, the language clearly allocates to the landlord, HUB, the responsibility for exterior repairs and to the Tenant, Omnicare, the responsibility for interior repairs. Moreover, there is no evidence that the non-occurrence of a flood was a basic assumption on which the contract was made. In fact the language of the lease indicates otherwise. The Lease, in addition to providing that while repairs are being made no rent is to be paid or collected, it also provides that Lessees obtain insurance.[3] The contemplation of flood was always there as evidenced by the fact that Defendants purchased flood insurance, collected $4.5 million for this occurrence of which only

---

[3] <u>See</u> Lease, Section 10.01. <u>Insurance</u>.

1.5 million was used to repair the premises. Defendants stopped payment in the 5th year of the 15 year lease even though Omnicare occupied and conducted some business on the premises for 18 months after rent payments ceased. During the rent abatement period, Omnicare did not restore the property to the condition it was in when it entered the Lease, as the Lease required. The parties' agreement contemplated the event of a casualty. This court has to enforce the parties' agreement absent extreme circumstances. These facts do not amount to circumstances that warrant the application of the frustration of purpose doctrine.

Defendants also assert Defendants' obligation to perform is excused by impracticability of performance.[4] Omnicare claims its ability to conduct business became impracticable when the continuation of its business at 525 would have amounted to extreme and unreasonable expense and difficulty through no fault of its own and as a result of events for which it had not assumed the risk. (Def. Mem. at 27.) In addition, Defendants argue measures proposed by HUB to reduce future flooding cost almost one-third of its total rental obligation and did not eliminate the property's flood exposure.

In support of its argument, Defendants cite Greenfield v. Kolea, 475 Pa. 351, 380 A.2d 758 (1977). In Greenfield, the Supreme Court of Pennsylvania held that a building completely destroyed by fire was the essence of the lease between two parties rather than the land. There were two separate, but related leases in that case. The first was for the subsequently destroyed building, a one story garage to be used to store vehicles, the second was for a lot with no building located on it. Unlike the present case, there was no provision as to the parties' obligations in the event of destruction of the building. The Greenfield Court replaced a former rule of law which

---

[4] See Restatement of Contracts, Second, §261.

stated that, in absence of a lease provision to the contrary, a tenant is not relieved from the obligation to pay rent despite the total destruction of the leased premises. Id., 475 at 353, 380 at 759. The Court reasoned the old rule was more appropriate in agrarian society where the parties valued the land as much as, or more than, the buildings on it. Id., 475 at 358, 380 at 761 (in concurring opinion). Evaluating that case as any other contract would be analyzed, the Court determined that the parties bargained for the existence of a building, and since the building no longer existed, the Court relieved the parties of their obligations. Id., 475 at 357, 380 at 760.

We can distinguish that case from the present action on two grounds. First, in Greenfield, the building that was the subject of the lease was no longer in existence and not useable for any purpose. The property here, 525, still stands and is useable by the Defendants as was exhibited by their use after they made partial repairs, even if they chose to do so only on a limited basis. There is no impracticability because of any defect in the property, but rather the impracticability stems from the perceptions of business trade people.[5] The building is still useable and capable of carrying out the purpose for which the Lease was intended–manufacturing, testing, analyzing, packaging and distribution of pharmaceutics. Secondly, the fact that the Defendants' customers are unwilling to continue to do business with Omnicare while it remains in the building has nothing to do with an inability to use the building. An ability to attract clientele is a risk every business takes. A lease that was nullified by a reluctance of a third party to deal with a lessee of a building would result in shifting the loss to the lessor. Moreover, as discussed above, there is a express provision in the Lease that allocated the risk. The Lease anticipated an inability to use

---

[5] See Olbum v. Old Home Manor, Inc., 313 Pa.Super. 99, 459 A.2d 757, n.3 (1983) (performance merely beyond party's capacity not sufficient to discharge obligation).

the building by calling on a temporary rent abatement, but stated that the Lessee must restore the interior.

Finally, Defendants claim their obligation to perform is excused by mutual mistake. Defendants claim that both parties to the lease were mutually mistaken as to the suitability of the property for the purpose for which the lease was entered into when they contracted. Defendants' argument lacks merit. As stated above, having bargained for a provision in which casualties were contemplated, any defense of mutual mistake is unavailable. Defendants' Motion will be denied with respect to the Defendants' defenses of frustration of purpose, impracticability and mutual mistake. All other defenses find no factual support in the record as a matter of law.[6]

### B.      Plaintiff's Motion for Summary Judgment

Plaintiffs move for summary judgment on the ground that HUB has made out every element of its breach of contract and unjust enrichment claims. In Pennsylvania, in order to establish a breach of contract the plaintiff must prove: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. CoreStates Bank N.A. v. Cutillo, 1999 PA Super 14, 16, 723 A.2d 1053, 1058 (Pa. Super. 1999).

It is not disputed that a contract did exist and all essential terms are unambiguously laid out in the Lease Agreement. Defendant did not pay rent after the flood, but continued to use the

---

[6] The other defenses raised by Defendant are: Defendants are not in breach of the Lease; Plaintiff's complaint fails to state a claim for which relief may be granted; Plaintiffs are not entitled to accelerate additional rent; Defendants' obligations under the terms of the Lease and the Guaranty are terminated; and Defendant's obligations under the terms of the Lease and the Guaranty are terminated due to a shortfall of insurance coverage for the Premises. (Def. Answer at 7.)

premises, even if for a limited purpose. Defendant also failed to repair the interior of the premises to the condition it was prior to the flood as required by the contract. As a result, Plaintiff did not receive rental income and once abandoned was in possession of a premises in need of renovation. As Plaintiffs argue, the absence of disputed, material facts compels the grant of summary judgment because Defendants failed to pay rent and restore the property, making out each element of the breach of contract claim. Plaintiffs' Motion for Summary Judgment will be granted on this ground.

In response to Defendants' other affirmative defenses, Plaintiff argues a flood does not constitute a breach of the covenant of quiet enjoyment because a property owner is not the insurer or guarantor of safety with regard to Acts of God. (Pl. Mem. at 10.) Defendants' defenses fail and summary judgment will be granted to Plaintiffs because there is no wrongful act of the lessor, but rather an act of God that interfered with Defendants' use of the premises. Plaintiff also contends there is no duty of good faith and fair dealing between a commercial landlord and tenant according to Pennsylvania courts. Requiring adherence, Pennsylvania courts have only found the duty to exist where the parties have a special relationship that would be characterized as confidential or fiduciary. Pennsylvania Dept. of Transportation v. E-Z Parks, Inc., 153 Pa. Commw. 258, 268 (1993). There is no such relationship here, where the contract is between sophisticated business entities. The undisputed evidence supports Plaintiffs' claims. Plaintiffs' Motion for Summary Judgment will be granted as to the breach of contract claims, which subsumes any claims under the unjust enrichment theory. Damages cannot be determined at this time and all issues concerning the amount of damages are deferred to trial.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY M. PORTNOY and<br>GERARD M. MARTIN, as Trustees for<br>HUB PROPERTIES TRUST | :<br>:<br>: | |
|                 Plaintiffs, | : | CIVIL ACTION |
| | : | |
|          v. | : | NO. 02-2905 |
| | : | |
| OMNICARE PHARMACEUTICS, INC.<br>and OMNICARE CLINICAL<br>RESEARCH, INC. | :<br>:<br>: | |
|                 Defendants. | : | |

### **ORDER**

**AND NOW**, this _____ day of June, 2004, having considered the parties' cross-motions for Summary Judgment and having heard oral argument from counsel of both parties, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**. **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED**. The entry of final judgment is deferred pending resolution of damages issues.

                                                    BY THE COURT:

                                                    _____

                                                  CLIFFORD SCOTT GREEN, S.J.